UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NATURAL RESOURCES DEFENSE COUNCIL, :
INC., :
                      Plaintiff, :
                                          : 10 Civ. 3400 (SHS)
       -against- :
                                          : OPINION & ORDER
WRIGHT-PATTERSON AIR FORCE BASE, :
a component of the UNITED STATES :
DEPARTMENT OF THE AIR FORCE, and the :
UNITED STATES DEPARTMENT OF THE AIR :
FORCE, :
                      Defendants. :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Plaintiff Natural Resources Defense Council, Inc. ("NRDC") brings this action alleging that defendants Wright-Patterson Air Force Base and the United States Department of the Air Force (collectively, the "Air Force") failed to conduct an adequate search for records responsive to a Freedom of Information Act ("FOIA") request made pursuant to 5 U.S.C. § 552. Defendants move pursuant to Federal Rule of Civil Procedure 56 for summary judgment in their favor on the ground that they have conducted an adequate search. Plaintiff opposes this motion and cross-moves for limited discovery. Because this Court finds that defendants have conducted an adequate search, their motion for summary judgment is granted.

I.    BACKGROUND

      The following facts are undisputed unless otherwise noted.

      A.  The FOIA Request

      On October 2, 2009, the NRDC submitted to the Wright-Patterson Air Force Base a FOIA request concerning a $6 billion "coal-to-liquid facility" (the "Facility") for Wellsville, Ohio proposed by Baard Energy. (*See* Letter from NRDC to Wright-Patterson (Oct. 2, 2009),

1

Ex. 1 to Declaration of Darrin L. Booher dated Oct. 28, 2010 ("Booher Decl."); Compl. ¶2.) According to the Complaint, the Facility would employ technologies "never before used in the United States to convert coal into diesel fuel, naphtha . . . and electricity." (Compl. ¶ 2.) In doing so, the Facility would allegedly emit annually more than 26 million tons of carbon dioxide, thereby "contribut[ing] to global warming" and "endanger[ing] human health and the environment." (*Id.* ¶ 3.) Specifically, the NRDC requested from Wright-Patterson all records regarding:

> (1) Any proposal by Baard Energy to enter into a contract for the purchase of fuel that would be generated by the Facility; (2) Any evaluation of the Facility as a possible source of fuel for the United States government or any of its components; (3) Any communications between Baard Energy and [Wright-Patterson] or any other [Department of Defense ("DOD")] components regarding the Baard Energy [] Facility; and (4) Any communications between the Ohio Department of Development, the Ohio Air Quality Development Authority, or the Columbiana County Port Authority and [Wright-Patterson] or other DOD components regarding the Baard Energy [] Facility.

(Letter from NRDC to Wright-Patterson (Oct. 2, 2009) at 1-2.)

### B.  The Air Force's Initial Search and Response that "No Records" Exist

Upon receiving the NRDC's FOIA request, the Air Force assigned it a case number and an action officer. (Booher Decl. ¶ 4.) The Air Force also confirmed with an NRDC attorney that the records search should be limited to Wright-Patterson and not referred to other Department of Defense ("DOD") organizations even though the FOIA request referenced DOD organizations apart from Wright-Patterson. (*Id.* ¶¶ 6-7.) Initially, the Air Force forwarded the FOIA request to the Civil Engineering Branch of the 88th Air Base Wing, which advised that it was not responsible for the subject matter addressed in the NRDC's FOIA request. (*Id.* ¶ 8.)

The Air Force next forwarded the request to the Propulsion Directorate at the Air Force Research Laboratory ("AFRL") located at Wright-Patterson. (*Id.*) Specifically, the request went to Detachment 1, AFRL Directorate of Contracting—the AFRL branch primarily responsible for

contracts having to do with fuel-related issues. (*Id.* ¶¶ 9-10.) This branch searched relevant AFRL offices and records both manually and electronically, using the search terms "BAARD Energy," "Wellsville, Ohio" and "coal-to-liquid facility." It reported that no responsive records were located. (*Id.* ¶ 10.) As this search was being completed, an Air Force FOIA analyst sent the NRDC an email stating that the Air Force would likely issue a "No Records" response; however, the analyst did include two links in her email: one link to an article about the AFRL's alternative fuels program at Wright-Patterson and another to a document entitled "The Dayton Region's Wright-Patterson Air Force Base Strategic Vision," which listed "BAARD Energy" as a "key linkage" for supporting alternative fuels research. (*See* Ex. 6 to Decl. of Joshua A. Berman dated Nov. 29, 2010 ("Berman Decl.").) On November 17, 2009, the Air Force officially sent the NRDC a "No Records" response to the FOIA request stating that "[a] thorough search by Air Force Research Laboratory (AFRL/PK) has not produced any responsive records." (Ex. 5 to Booher Decl.)

      C.  The NRDC's Administrative Appeal

The following month, the NRDC filed an administrative appeal of the Air Force's "No Records" response. (Ex. 6 to Booher Decl.) The NRDC attached to its appeal both the "Strategic Vision" document referring to Baard and a February 2009 email exchange that it had obtained through a separate public records requests to Ohio state agencies. (Booher Decl. ¶ 12; Attach. H to Berman Decl.) This email exchange between William Harrison—a Technical Advisor at the Fuels and Energy, Propulsion Directorate of the AFRL located at Wright-Patterson—and Stephan Dopuch—Vice President of Business Development at Baard Energy—concerned the Air Force's policy on alternative fuels. (*Id.*)

3

The Air Force forwarded the NRDC's administrative appeal to Detachment 1 of the AFRL Directorate of Contracting, which confirmed that it had no responsive records and, in turn, forwarded the appeal directly to Harrison. (Booher Decl. ¶¶ 13-14.) According to a declaration by Darrin Booher, the Air Force action officer assigned to this FOIA request, Harrison subsequently "searched his paper and electronic records and located no records that were responsive to the FOIA request." (*Id.* ¶ 15.) Harrison also allegedly asked other staff members involved with synthetic fuels to search their files for responsive records, but none were located. (*Id.*)

In March 2010, the NRDC supplemented its administrative appeal with copies of two additional email exchanges from February and March 2007, respectively, which the NRDC had obtained from the state of Ohio and believed were relevant to the FOIA request. (Ex. 10 to *id.*) The first email exchange from February 2007—between Harrison and Dopuch from Baard Energy—referenced briefings that Harrison attended, a Baard project, and setting up a meeting. (Attach. I to Ex. 10 to *id.*) The March 2007 email exchange between Paul Bollinger—Special Assistant to the Assistant Secretary of the Air Force, Installations, Environment & Logistics—and John Baardson—a Baard executive—concerned Baardson's invitation to join high-ranking officials at an Air Force forum on energy. (Attach. J to Ex. 10 to *id.*) Booher stated that he specifically spoke to Harrison about the emails supplied by the NRDC and that Harrison said he did not have copies of these emails because he had deleted them pursuant to the Air Force's Records Disposition Schedule. (*Id.* ¶ 20.)

In July 2010, the Air Force expanded its search to additional Wright-Patterson offices. (*Id.* ¶ 21.) The expanded search covered offices dealing with contracting and environmental matters at its Headquarters Air Force Material Command and at its Aeronautical Systems Center,

4

as well as its public affairs offices.  (*Id.*)  None of these offices located responsive records.  (*Id.* ¶¶ 22-25.)  On August 30, 2010, the Air Force affirmed its original "No Records" response and dismissed the NRDC's administrative appeal.  (Ex. 12 to *id.*)

        D.  <u>This Action and the Air Force's Belated Production of Responsive Records</u>

Plaintiff commenced this action in April 2010, challenging the adequacy of the Air Force's search.  In October 2010, two months after dismissal of the NRDC's administrative appeal, the Air Force moved for summary judgment on the ground that it had conducted an adequate search for responsive records.  In support of this motion, the Air Force submitted a declaration from Booher, the officer assigned to the NRDC's FOIA request.  Plaintiff opposed defendants' motion for summary judgment and has cross-moved for limited discovery related to the adequacy of the Air Force's searches, Harrison's purported destruction of responsive records, application of Air Force policy to those records, and whether any responsive records are otherwise retrievable through alternative search methods.

In the course of briefing these motions, the Air Force produced additional records responsive to the NRDC's FOIA request.  A declaration by John Pellett—the Air Force counsel responsible for reviewing the NRDC's administrative appeal—acknowledges an earlier "miscommunication" between Harrison and Booher regarding the existence of responsive documents.  (*See* Decl. of John M. Pellett dated Dec. 23, 2010 ¶ 5 ("Pellett Decl.").)  Pellett states that in December 2010 he met with Harrison to clarify Harrison's response to the FOIA request and that, contrary to statements in Booher's declaration, the Air Force did in fact obtain responsive records from Harrison during the NRDC's administrative appeal.  (*Id.*)

On the same day Pellett executed his declaration, the Air Force sent the NRDC's counsel five of those responsive documents—four filings before the Ohio Environmental Review

Appeals Commission about the Facility and a January 2007 email from Dopuch of Baard Energy referencing a telephone discussion with a Wright-Patterson employee and an upcoming DOD briefing at which the Wright-Patterson employee might use information provided by Baard. (*Id.* ¶ 9; *see* Exs. 1, 2 to *id.*) The sixth document—a follow-up email from Dopuch dated February 1, 2007 with slides about the carbon output of what appears to be the Facility—was sent subsequently to the NRDC, but with redactions. (*See* Attach. to Letter from Joshua Berman (March 16, 2011).) The NRDC does not challenge any of the redactions. (*Id.*)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute as to a material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

The statutory and case law governing the adequacy of a FOIA search for records is rather straightforward. "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B)). An agency may rely on "affidavits or

declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption." *Id.* Such agency affidavit or declarations are "accorded a presumption of good faith." *Id.* (internal citation omitted). "In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Id.* (internal citations omitted).

### B. Adequacy of the Air Force's Search

The issue for resolution on these motions is whether the Air Force conducted an adequate search for records responsive to the NRDC's FOIA request. The NRDC contends that the Air Force has not met its burden because (1) the Air Force's declarations are inadmissible; (2) the Air Force's declarations are insufficiently detailed; and (3) there is tangible evidence of overlooked materials.

#### 1. *The Air Force's Declarations are Admissible*

Plaintiff challenges the admissibility of the Air Force's two declarations on the grounds that they are not based on personal knowledge and therefore are inadmissible hearsay. This argument is meritless. "An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e)[1]; there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Carney*, 19 F.3d at 814; *see Adamowicz v. I.R.S.*, 672 F. Supp. 2d 454, 463 (S.D.N.Y. 2009) (finding officer assigned to process FOIA request competent to testify about government's search). Here, Booher declares

---

[1] The December 1, 2010 amendments to Federal Rule of Civil Procedure 56 moved the relevant Rule 56(e) provision to Rule 56(c)(4). *See* Fed. R. Civ. P. 56(c)(4), amendment notes to Subdivision (c)(4).

under penalty of perjury that he was the "action officer" responsible for processing the NRDC's FOIA request and that his declaration "is based on personal knowledge." (*See* Booher Decl. ¶¶ 1-4.) Similarly, Pellett states that he is the agency counsel assigned to this litigation and was responsible for reviewing the NRDC's administrative appeal, that he spoke with Booher and Harrison in order to resolve any discrepancies, and that his declaration is based on "personal knowledge." (*See* Pellett Decl. ¶¶ 1-5.) Accordingly, Booher and Pellett are competent to testify about the Air Force's search, and their declarations will be considered for the purpose of determining the adequacy of that search.

### 2. *The Air Force's Declarations are Sufficiently Detailed*

The NRDC contends that even if the Air Force's declarations are admissible, they lack sufficient detail. The Second Circuit requires that agency declarations in support of summary judgment in FOIA cases be "relatively detailed and nonconclusory." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488-89 (2d Cir. 1999); *see also Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993) ("A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted."); *Tarullo v. U.S. Dep't of Defense*, 170 F. Supp. 2d 271, 275 (D. Conn. 2001) (finding declaration that does not describe "the scope and nature of the search conducted" to lack the required specificity).

Here, the Air Force's declarations are "relatively detailed and nonconclusory." *Grand Cent. P'ship, Inc.*, 166 F.3d at 488-89. The Booher declaration specifies that the Air Force first searched the Civil Engineering Branch of the 88th Air Base Wing and the branch of the AFRL Directorate of Contracting that has primary responsibility for fuels-related issues at Wright-Patterson. This declaration identifies the particular search terms used by the AFRL Directorate of Contracting. (Booher Decl. ¶¶ 8-10.) Moreover, Booher states that following plaintiff's

administrative appeal, the Air Force re-contacted the abovementioned branches and expanded its search to a host of additional offices dealing with contracting, environmental, and public affairs matters.  (*Id.* ¶¶ 13, 17-25.)  According to his declaration, Booher also spoke with Harrison about Harrison's paper and electronic search for records, Harrison's communications with other staff members regarding the FOIA request, and the fact that the Air Force had not actually evaluated the Facility proposed by Baard Energy.  (*Id.* ¶¶ 15-16.)  Likewise, the Pellett declaration details a subsequent conversation that Pellett had with Harrison in order to clear up earlier confusion about Harrison's search for responsive records.  Because the Air Force's declarations describe the scope and nature of a thorough search, they contain sufficient specificity.

       3. *Plaintiff's Tangible Evidence Does Not Create a Genuine Dispute of Material Fact as to the Adequacy of the Air Force's Search*

Plaintiff argues that responsive documents it uncovered on its own and a contradiction in the Air Force's declarations demonstrate that the Air Force's search was inadequate.  A court should not grant summary judgment where there is "tangible evidence" that creates a genuine dispute as to the adequacy of the agency's search.  *Carney*, 19 F.3d at 812; *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (summary judgment inappropriate "if a review of the record raises substantial doubt, particularly in view of . . . 'positive indications of overlooked materials'" (internal citation omitted)); *see also* Fed. R. Evid. 56(c)(4).

Here, plaintiff points to three sets of email exchanges suggesting the existence of additional responsive documents in the Air Force's possession and thus the inadequacy of the Air Force's search: (1) the 2009 emails between Harrison and Dopuch from Baard Energy regarding the Air Force's policy on alternative fuels; (2) the 2009 emails between Bollinger from DOD and Baardson from Baard Energy regarding Baardson's attendance at an Air Force energy forum; and (3) the 2007 emails—only recently turned over by the Air Force—between Dopuch and a

9

Wright-Patterson employee regarding the carbon output of a Baard plant in Wellsville, Ohio and a DOD briefing on green energy. Indeed, these responsive records show that someone at Wright-Patterson—perhaps Harrison—was communicating with Baard Energy executives as early as 2007 about the proposed Facility.

Nonetheless, the mere existence of these records does not establish that the Air Force possesses additional records. Although plaintiff contends that the Air Force has failed to demonstrate that any purported deletion of records complied with the Air Force's Records Disposition Schedule, the issue of whether the Air Force complied with its own document retention policy is immaterial to the issue of whether the Air Force met its burden under FOIA. *See Piper v. U.S. Dep't of Justice*, 294 F. Supp. 2d 16, 22 (D.D.C. 2003) ("Even if the arguments concerning possible FBI violations of law regarding document destruction were taken as true, 'they do not establish that the defendant actually has possession of the [documents], which is a prerequisite for FOIA liability.'" (citing *Folstad v. Bd. of Governors of the Fed. Reserve Sys.*, 234 F.3d 1268 (Table), 2000 WL 1648057, at *2 (6th Cir. 2000))). Moreover, the Air Force is under no obligation to locate every single record that could possibly exist. *Grand Cent. P'ship, Inc.*, 166 F.3d at 489 ("When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." (citing *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991))).

Finally, the NRDC contends that the Air Force's declarations themselves provide tangible evidence that additional responsive records likely exist. Plaintiff is correct that the Air Force's declarations contain a contradiction. The Pellett declaration acknowledges an inaccuracy in the

10

earlier Booher declaration. Although the Booher declaration stated that Harrison failed to identify any responsive records during the processing of the NRDC's administrative appeal, Harrison did in fact identify such records. In other words, the Pellett declaration admits that the Air Force made a mistake—the Air Force did not turn over responsive documents when it first should have.

But the Air Force subsequently did turn over those documents. That the Air Force confessed to a mistake in its initial declaration and then corrected that mistake does not render the search inadequate. An agency should be encouraged, rather than discouraged, to "reappraise its position, and when appropriate, release documents previously withheld." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986). Indeed, the Court of Appeals for the District of Columbia Circuit has suggested that an agency should be trusted more, not less, when it admits to a mistake. *Id. See also Lowy v. I.R.S.*, No. 10 Civ. 00767, 2011 WL 1211479, at *7 (N.D. Cal. Mar. 30, 2011) ("[T]he fact that additional searches were conducted by the IRS and additional responsive documents located after the inception of the litigation . . . does not entitle plaintiffs to relief on their claim that the search was deficient."); *Richardson v. U.S. Dep't of Justice*, 730 F. Supp. 2d 225, 231-22 (D.D.C. 2010) (rejecting argument that the agency's release of documents after the filing of a lawsuit is evidence of an inadequate search); *cf. Meeropol*, 790 F.2d at 952 (no bad faith based on the fact that after the FBI claimed to have completed its search, it uncovered responsive files because evidence of their existence was supplied by plaintiffs ).

There is nothing in the record to impugn the Air Force's latest declaration or to suggest that the Air Force failed to contact a particular individual or search a particular location likely to possess responsive records. Accordingly, based on the competent and sufficiently detailed declarations from Booher and Pellett, the Court concludes that the Air Force's search was

11

adequate. Because summary judgment in favor of the Air Force is appropriate as a matter of law, the NRDC is not entitled to the discovery it seeks. *See Carney*, 19 F.3d at 813 (no abuse of discretion where district court denies plaintiff's request for discovery based on speculation that other documents exist).

### III.  CONCLUSION

Because the Court finds that the Air Force conducted an adequate search for records responsive to the NRDC's FOIA request, defendants' motion for summary judgment is granted and plaintiff's motion for limited discovery is denied.

Dated: New York, New York
August 3, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.